UNITED STATES, Appellee,

v.

Delbert L. LAWS, Private, U. S. Marine
Corps, Appellant.

Dkt. No. 37,738.

NCM 781639.

U. S. Court of Military Appeals.

Sept. 21, 1981.

For Appellant: *Captain Joseph M. Poirier*, USMC (argued); *Lieutenant Vance J. Bettis,* JAGC, USNR, *Captain Allan H. Meltzer,* USMCR (on brief).

For Appellee: *Captain Craig L. Kemmerer*, USMCR (argued); *Commander T. C. Watson, Jr.,* JAGC, USN (on brief).

*Opinion*

COOK, Judge:

Appellant was tried by a special court-martial with members and stands convicted of five specifications of absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. We granted review to determine if the military judge erred to the prejudice of appellant by the manner in which he instructed the members on a jurisdictional issue which was litigated at trial. 8 M.J. 39 (1979).

During an Article 39(a)[1] session, appellant testified that the recruiter responsible for his enlistment had advised him to conceal various matters related to his earlier involvement with civilian law enforcement officials. The defense submitted that appellant's enlistment was contrary to regulation and the recruiter's misconduct precluded the exercise of court-martial jurisdiction under the doctrine of *United States v. Russo,* 1 M.J. 134 (C.M.A.1975).[2] The Article 39(a) session adjourned without determination of the issue; when it reconvened, appellant was absent. After receiving evidence reflecting that appellant was voluntarily absent, the military judge ordered the proceedings to continue.[3] In due course, the recruiter testified and totally contradicted appellant's version of the enlistment process. The military judge then

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. This doctrine has been modified by P.L. 96–107, 93 Stat. 810–811 (November 9, 1979).

3. *See generally* para. 145*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), and Mil.R.Evid. 804(b)(1).

ruled that "there is jurisdiction in this court over the accused." At the insistence of the military judge, the jurisdictional issue was relitigated before the court members. Over the Government's objection, the testimony appellant had given during the Article 39(a) session was read to the court members. The Government again called the recruiter, who repeated his earlier testimony.

Over trial counsel's objection, the military judge submitted the jurisdictional issue to the court members prior to submitting the issue of guilt or innocence. He specifically instructed the members that they "must be persuaded beyond a reasonable doubt that there was no recruiter misconduct." Upon returning from deliberation on the jurisdictional issue, the president announced that, "with at least two-thirds of the members concurring," they had determined that the enlistment contract was valid. The Government then presented documentary evidence to establish appellant's unauthorized absence for each of the five alleged occasions. In his instructions on the elements of the offense, the military judge said:

> Gentlemen, you have already determined the first element, although it is not usually stated as an element, but the first element of any unauthorized absence offense is jurisdiction over the accused. You have already made a determination against the accused in this regard. You have determined that there is jurisdiction over him, so you may regard the language in these Specifications that he is a person subject to the jurisdiction of the Marine Corps under Article 2, you may regard that as surplusage at this point since that issue has already been determined.

Trial defense counsel offered no objection to either the bifurcation of the trial or the instructions, but appellate defense counsel have taken a different position. As appellant was tried before four members, only three votes were required for an adverse determination. Under military practice only the required fraction of the members voting is announced. *United States v. Hendon*, 6 M.J. 171 (C.M.A.1979). Thus, counsel argue that it is mathematically possible that only three members voted against him on the jurisdictional issue and only three members voted against him on the ultimate determination of guilt. Appellate defense counsel argue that, if this were the actual vote, there is a possibility that one member could have voted against the accused on the jurisdictional question but for him on the ultimate issue of guilt or innocence. The remaining third vote on guilt would have been cast under such circumstances by the member who voted in his favor on the jurisdictional issue. Accordingly, counsel submit that there is no assurance that the same three members voted against him during the two segments of the bifurcated trial.

Appellant's argument presumes that, under the authority of *United States v. Ornelas*, 2 U.S.C.M.A. 96, 6 C.M.R. 96 (1952), the military judge was required to submit the issue to the court members. I have reservations about the continued validity of the *Ornelas* holding which requires the court members to resolve an issue of *in personam* jurisdiction when there are contested facts and a purely military offense is involved. The metamorphosis of *in personam* jurisdiction into a matter for the members' determination, with respect to such military offenses as desertion and absence without leave, seems to me to be an unwarranted exception to the general rule that jurisdiction over person and offense is a question of law for the trial judge. My reservations are heightened by the practical difficulties inherent in the *Ornelas* rule. For example, if several offenses are before the court and some are military but others are not, I can imagine the accused's and the court members' confusion at the judge's determination of jurisdiction with respect to the nonmilitary offenses and the court members' determination of jurisdiction of the military offenses.[4]

---

4. There is a concomitant problem of different standards of proof. *See* para. 57*g*(1), Manual, *supra*; *United States v. White*, 611 F.2d 531 (5th Cir.1980), *cert. denied*, 446 U.S. 992, 100 S.Ct. 2978, 69 L.Ed.2d 849 (1980); *Wright, Fed-*

In recent years, this Court has remanded cases for resolution of *in personam* jurisdiction by a judge alone without regard to the nature of the offense.[5] My Brothers have chosen to adhere to *Ornelas*. We all agree that, under the circumstances of this case, the appellant was not prejudiced by the court members' first considering the jurisdiction issue and subsequently determining the issue of guilt.

The decision of the United States Navy Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result):

In *United States v. Ornelas*, 2 U.S.C.M.A. 96, 101, 6 C.M.R. 96, 101 (1952), this Court held that members of the court-martial should decide, as part of their determination of guilt or innocence, whether the accused had been validly inducted into the Army. That ruling was the source[1] of the pertinent language in paragraph 57b of the Manual for Courts-Martial, United States, 1969 (Revised edition):

A question is interlocutory unless the ruling on it would finally decide the case on its merits. Questions that go to the ultimate issue of guilt or innocence are not interlocutory. Whether a question is interlocutory may vary with the context in which it arises. An issue is not purely interlocutory if an accused raises a defense or objection and the disputed facts involved go to the ultimate question of guilt or innocence. For example, if dur-

ing a trial for desertion the accused makes a motion to dismiss for lack of jurisdiction and presents evidence tending to show that he is not a member of an armed force, his status as a military person reaches the ultimate question of guilt or innocence, and, if the motion is denied, the disputed facts must be resolved by each member of the court in connection with his deliberation upon the findings. If, on the other hand, the accused was charged with larceny and presented the same evidence as to his military status, the evidence would bear only upon his amenability to trial and the issue would be disposed of solely as an interlocutory question.

The appellant's defense that he was innocent of unauthorized absence because he had not validly enlisted in the Armed Forces is close enough to the example set forth in the Manual that I must conclude the President intended for it to be submitted to the members of the court-martial. Cf. *United States v. Bailey*, 6 M.J. 965 (N.C. M.R.1979).[2]

In *United States v. Torres*, 22 U.S.C.M.A. 660–61 (1973), the offenses involved were non-military offenses and therefore, under paragraph 57b of the Manual, *supra*, the issue as to jurisdiction of the person would properly be decided finally by the military judge as an interlocutory manner. Thus, the order of remand in that case was not inconsistent with the Manual. While, as the principal opinion herein points out, on

*eral Practice and Procedure*: Criminal § 307 (1969).

5. *See United States v. Owens*, 7 M.J. 388 (C.M. A.1979); *United States v. Craig*, 4 M.J. 141 (C.M.A.1977); *Douglas v. United States*, 3 M.J. 463 (C.M.A.1977); *Barnett v. United States*, 3 M.J. 251 (C.M.A.1977); *United States v. Kneeland*, 23 U.S.C.M.A. 717 (1975); *United States v. Jones*, 23 U.S.C.M.A. 715 (1975); *United States v. Martin*, 23 U.S.C.M.A. 714 (1975); *United States v. Mathis*, 23 U.S.C.M.A. 695 (1974); and *United States v. Torres*, 22 U.S.C. M.A. 660 (1973). Chief Judge Everett suggests that "any inconsistency" between these cases and "the Manual provision [on the subject] was an oversight." The cases, however, can be construed differently. Even *United States v. Ornelas*, 2 U.S.C.M.A. 96, 6 C.M.R. 96 (1952),

recognized that submission of the jurisdictional issue is required only if there are "contested" issues of fact; a remand to a trial judge to determine the actuality of conflict is, therefore, appropriate.

1. *See* D.A. Pamphlet 27–2 (1970), Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition), para. 57b (2d subparagraph). The *Ornelas* case is erroneously cited therein as Orvelas.

2. Since the President has prescribed the applicable procedure pursuant to his powers under Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836, I need not consider whether the Uniform Code or the Constitution would compel a similar result.

other occasions this Court entered similar orders in cases involving military offenses,[3] where a remand for determination of *in personam* jurisdiction by a military judge might seem inconsistent with the accused's right to have this issue determined by the court members, I assume that any inconsistency with the Manual provision was an oversight, rather than a *sub silentio* overruling of *Ornelas* and rejection of the President's directive.

Thus, in the case at hand, the issue of recruiter misconduct, if properly before the court-martial at all,[4] ultimately had to be decided by the trier of fact pursuant to the standard of proof beyond a reasonable doubt. After coming to this conclusion, the military judge adopted a procedure which embodied the logic that, if the Government could not convince the court members beyond a reasonable doubt that the appellant's enlistment did not result from recruiter misconduct, then there was no need for the trier of fact to hear evidence on the other issues relevant to appellant's guilt. Under some circumstances, such an approach might forestall an unnecessarily lengthy trial; and so the judge's innovativeness can be applauded. However, it is doubtful that the case at hand, which involved five specifications of unauthorized absence,[5] was especially suitable for employment of the procedure. Moreover, if the court members are asked to make special findings, the procedure thereafter should be different from that which the military judge used here.

After the court members initially determined by a two-thirds secret ballot vote that the enlistment contract was valid, they were instructed on the elements of the offense. However, the judge advised them that, as they had already determined the enlistment contract to be valid, they need not consider that issue further. In so doing, he overlooked the possibility that of the four court members participating in appellant's trial, one might have entertained a reasonable doubt as to the validity of the enlistment contract and another might have experienced a reasonable doubt as to some other issue concerning guilt of the offense. Under this hypothesis, the procedure employed by the judge would make it theoretically possible that only two of the four court members were convinced beyond a reasonable doubt that Laws was guilty of all the elements of the charged offenses and had no valid defenses.

While recognizing this possibility, I have concluded from my reading of the record that in this case it is no more than theoretical. The issue upon which the parties met in combat was recruiter misconduct. In other respects, the charges were not seriously contested and, as in most cases of unauthorized absence, were tried on the basis of official records. The bifurcated procedure employed by the judge tended to highlight the primary issue of recruiter misconduct; thus, it was beneficial to the appellant and was fully acquiesced in by defense counsel, who did not object in any way to the judge's instructions or raise any question about the voting percentages. Under these circumstances, I am sure that appellant was in no way prejudiced by the procedure employed or by the judge's instructions.

FLETCHER, Judge (concurring in the result):

The decision of this Court in *United States v. Ornelas*, 2 U.S.C.M.A. 96, 6 C.M.R. 96 (1952), was complied with in appellant's case. However, to the extent that the lead opinion overrules that decision and ignores paragraph 57*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), I disagree. Of course, the question of *in personam* jurisdiction may be raised in all cases

---

3. *See, e. g., United States v. Craig*, 4 M.J. 141 (1977) (unauthorized absence); *United States v. Kneeland*, 23 U.S.C.M.A. 717 (1975) (unauthorized absence), according to the appellate papers on file in this Court.

4. The Court has not yet decided whether the 1979 amendment of Article 2 of the Code, 10 U.S.C. § 802 has retroactive effect.

5. After arraignment, appellant departed once again without permission.

irrespective of the offense. *See* Article 2, Uniform Code of Military Justice, 10 U.S.C. § 802, and para. 68*b*(1), Manual, *supra.* Yet, this is not a proper basis to conclude that appellant's jurisdictional . motion did not also raise a factual issue relevant to the determination of a contested charge of un-

authorized absence laid under Article 86, UCMJ, 10 U.S.C. § 886. *See* Article 39(a)(1), UCMJ, 10 U.S.C. § 839(a)(1).[1] Though I perceive error, I conclude there was no possibility of prejudice under the circumstances of the present case. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

1. This amended codal provision parallels Fed.R. Crim.P. 12(b), and codifies this Court's interpretation of the 1951 version of Article 51(b), Uniform Code of Military Justice, 10 U.S.C. § 851(b), which was articulated in *United States v. Ornelas*, 2 U.S.C.M.A. 96, 6 C.M.R. 96 (1952).